IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| F.K., by and through her mother, A.K., | ) |
|  | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| vs. | ) |
|  | )   Civ. No. 12-00240 ACK-RLP |
| DEPARTMENT OF EDUCATION, State of Hawaii, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

**ORDER AFFIRMING THE ADMINISTRATIVE HEARINGS OFFICERS' FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISIONS IN DOE-SY 1011-126 AND DOE-SY 1112-067**

**PROCEDURAL BACKGROUND**

This case comes before the Court on review of two decisions of the State of Hawaii's Office of Administrative Hearings concerning the due process hearings brought by F.K. ("Student" or "F.K."), through her mother, against the State of Hawaii's Department of Education.  The court has jurisdiction pursuant to 20 U.S.C. § 1415(i).  Through this lawsuit, Plaintiffs challenge the Administrative Hearings Officers' decisions that were issued on April 9, 2012 and April 25, 2012, both of which concluded that Defendant was the prevailing party.

-1-

On May 8, 2012, F.K. through her parent, A.K., filed a Complaint for Declaratory and Injunctive Relief against the Department of Education, State of Hawaii.  (Doc. No. 1.)  By way of their Complaint, Plaintiffs appealed to the Court from two separate decisions by two Administrative Hearings Officers: Cases DOE-SY 1011-126 and DOE-SY 1112-067.  Id. at 2.  On September 24, 2012, Plaintiffs filed separate Opening Briefs for each of these administrative appeals.  (Doc. Nos. 34, 35.)  On October 8, 2012, Defendant filed separate Responses.  (Doc. Nos. 36 and 37.)  Subsequently, on October 22, 2012, Plaintiffs filed separate Replies.  (Doc. Nos. 38 and 39.)

The Court held a Hearing on the Administrative Record on December 3, 2012.

## FACTUAL BACKGROUND[1/]

The factual background is set forth in detail in the administrative hearings officers' decisions.  (See Doc. Nos. 34-1 and 35-1.)  The parties have not challenged the officer's factual findings.  The Court will highlight some of the relevant facts in this section, but does not intend to reject any of the factual findings that the administrative hearings officer made.

Student is a 14-year-old female who has a primary

---

[1/] The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

-2-

diagnosis of autism and hearing impairment and is IDEA-eligible under the category of autism.  (Plaintiff's Opening Brief in DOE-SY 1011-126, at 1.)  A Hearings Officer ordered the DOE to privately place Student at Loveland Academy at public expense and to pay for the 2008-2009 and 2009-2010 school years.  Id. at 2 (citing Hearings Officer's Findings of Fact in DOE-SY 1011-126, at 1-4)).  The Hearings Officer determined that Loveland was an appropriate placement for Student, and Loveland remains the current ordered, current pendent and current "stay put" placement for Student.  Id.  Student currently attends Loveland Academy. Id. at 1-2.

At the end of the 2009-2010 school year, the DOE began a new IEP process to remove Student from Loveland Academy.  Id. at 2.  On February 28, 2011, following several IEP meetings, the DOE proposed to place Student at King Intermediate School for the remainder of the 2011 school year.  Plaintiffs contend that the DOE failed to consider the harmful effects on Student if she were to transition to King Intermediate for three or four months and then transition to Castle High School, "one of the worst performing schools in all of Hawaii."  Id. at 3.  On March 10, 2011, a Prior Written Notice ("PWN") was issued.  Id. at 11. Plaintiffs requested a due process hearing on the DOE's offer of FAPE for the 2010-2011 school year, and that request was the basis of Plaintiffs' appeal in Case No. DOE-SY 1011-126; one of

the two administrative decisions appealed by way of Plaintiff's instant Complaint.  (See Hearings Officer's Findings of Fact in DOE-SY 1112-067, at 3.)

The DOE, alleging that Loveland Academy had prevented it from fulfilling its Monitoring duties as required under State law, ceased making Stay Put payments to Loveland for Student's services in September 2011.  (Plaintiff's Opening Brief in DOE-SY 1112-067 at 7.)  On or about December 5, 2011, the DOE, through its agents and employees, visited Loveland Academy and allegedly demanded to conduct multiple classroom observational assessments and reevaluations on Student without the signed informed consent from Student's parent that the DOE allegedly was required to obtain.  (Plaintiffs' Opening Brief in DOE-SY 1112-067, at 8.)

In response to a December 5, 2011 letter from Loveland, Defendant DOE declared in an undated letter that it was going to withhold reimbursement for tuition, related services, and stay put payments by invoking Act 129's provision to withhold tuition payments when monitoring is denied.  Id. at 8.

On June 22, 2012, in Civ. No. 12-00136 ACK-RLP – a companion case also brought by Plaintiffs against the DOE – this Court issued an Order Granting, As Modified, Plaintiffs' Motion for a Preliminary Injunction.  (Civ. No. 12-00136 ACK-RLP, Doc. No. 33.)  Pursuant to that Order, the Court mandated the DOE to pay the reasonable expenses for Student's placement at Loveland

Academy from June 2, 2011 throughout the pendency of litigation. Id. at 49-50.  The Court further directed Loveland to submit all relevant bills and invoices specifying the services provided to Student each month from June 2, 2011 through the present for the DOE's review.  Id. at 50.  The Court also specified that "the DOE must timely pay the ongoing tuition while Stay Put is in effect regardless of any disputes, to ensure Student receives appropriate services . . . ."  Id.[2/]  Plaintiffs contend that although Loveland Academy has complied with all monitoring requests with respect to F.K. "to the DOE's satisfaction," the DOE has still failed to pay one cent in Stay Put payments to date.  (Plaintiffs' Reply in 1112-067, at 2.)

## STANDARD OF REVIEW

In evaluating an appeal of an administrative decision under the IDEA, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. §

---

[2/] On August 6, 2012, the Court denied Defendant's Motion for Reconsideration of the Court's Preliminary Injunction Order. (Civ. No. 12-00136 ACK-RLP, Doc. No. 54.)

1415(i)(2)(C).[3]

The statutory requirement "that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982). Rather, "due weight" must be given to the findings in the administrative proceedings. Id.

A court's inquiry in reviewing administrative decisions under the IDEA is twofold:  "First, has the State complied with the procedures set forth in the Act?  And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?  If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." Id. at 206-07 (footnotes omitted); see also Union Sch. Dist. v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994).

The amount of deference given to an administrative hearing officer's findings is a matter of discretion for the

---

[3] An amendment to the IDEA, effective July 1, 2006, affected the subsection number at which this provision appears in the statute, but did not affect the text of the provision. Compare 20 U.S.C. § 1415(i)(2)(B) (in effect prior to July 1, 2005) with 20 U.S.C. § 1415(i)(2)(C) (effective July 1, 2005). Thus, the Court's analysis on this issue is identical under either version of the statute.

court.  See Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995) (quoting Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987)).  The Court must "consider the findings 'carefully and endeavor to respond to the hearing officer's resolution of each material issue,' but the court 'is free to accept or reject the findings in part or in whole.'"  Id. (quoting Gregory K., 811 F.2d at 1311).  "When exercising its discretion to determine what weight to give the hearing officer's findings," the court may "examine the thoroughness of those findings" and accord greater deference when they are "'thorough and careful.'"  Id. (quoting Union Sch. Dist. v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994)).

## DISCUSSION

In this action, Plaintiffs challenge two separate but related rulings from Administrative Hearings Officers concerning Student; namely, the April 9, 2012 decision in case DOE-SY 1011-126 and the  April 25, 2012 decision in case DOE-SY 1112-067.  In each of these underlying due process hearings, Plaintiffs challenged the IEP developed on February 28, 2011 and the related March 10, 2011 PWN.  The Court addresses each of these challenges in turn herein.

## I.    The IDEA, Generally

The IDEA defines a "free appropriate public education" as one that, inter alia, is "provided in conformity with the

individualized education program required under section 1414(d) of this title."  20 U.S.C. § 1401(9)(D).  "[W]hen a school district does not perform exactly as called for by the IEP, the district does not violate the IDEA unless it is shown to have materially failed to implement the child's IEP.  A material failure occurs when there is more than a minor discrepancy between the services provided to a disabled child and those required by the IEP."  Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J, 502 F.3d 811, 815 (9th Cir. 2007).  The Ninth Circuit recently affirmed that "[t]he proper standard to determine whether a child has received a free appropriate public education is the 'educational benefit' standard set forth by the Supreme Court in Rowley," and further noted that

> [s]ome confusion exists in this circuit regarding whether the Individuals with Disabilities Education Act requires school districts to provide disabled students with "educational benefit," "some educational benefit" or a "meaningful educational benefit."  As we read the Supreme Court's decision in Rowley, all three phrases refer to the same standard.  School districts must, to "make such access meaningful," confer at least "some education benefit" on disabled students.  For ease of discussion, we refer to this standard as the "educational benefit" standard.

J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 951 n. 10 (9th Cir. 2010) (internal citations omitted).

If a public school fails to provide a FAPE to a student, and a parent places that student in an appropriate private school, a court may require the DOE to reimburse the

parents for the private school tuition.  <u>See</u> 20 U.S.C. §
1412(a)(10)(C)(ii); <u>Forest Grove Sch. Dist. v. T.A.</u>, 557 U.S.
230, 129 S. Ct. 2484, 2488 (2009).

To determine the educational benefit, the Court looks
broadly at the academic, social, health, emotional,
communicative, physical, and vocational needs of a student.
<u>Seattle Sch. Dist., No. i. v. B.S.</u>, 82 F.3d 1493, 1498 (9th Cir.
1996). Further, an appropriate education "does not mean the
absolutely best or 'potential-maximizing' education for the
individual child." <u>Gregory K.</u>, 811 F.2d at 1314.  Rather, the
state must only provide "a basic floor of opportunity" for the
student.  <u>Id.</u>  Moreover, although a family's preferred schooling
may be more beneficial for the student than the DOE's proposed
placement, this alone does not make the DOE's placement
inappropriate.  <u>Gregory K.</u>, 811 F.2d at 1314.  "'[A] school
district fulfills its substantive obligations under the IDEA if
it provides an IEP that is likely to produce progress, not
regression, and if the IEP affords the student with an
opportunity greater than mere trivial advancement.'"  <u>T.P. v.
Mamaroneck Union Free Sch. Dist.</u>, 554 F.3d 247, 254 (2d Cir.
2009) (citation omitted); <u>N.S. v. Hawaii</u>, Civ. No. 09-00343 SOM-
KSC, 2010 WL 2348664, at *4 (D. Haw. June 9, 2010).

Further, Plaintiffs have the burden of proof in this
appeal.  <u>Schaffer ex. rel. Schaffer v. Weast</u>, 546 U.S. 49, 62

(2005)("The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief."). <u>See also</u> <u>Van Duyn ex. rel. Van Duyn v. Baker Sch. Dist. 5J</u>, 502 F.3d 811, 820 (9th Cir. 2007) ("Van Duyn, as the party objecting to the IEP's implementation . . . bore the burden of proof at the administrative hearing.").

## II.  Plaintiffs' Challenge to DOE-SY 1011-126

        Plaintiffs appeal from the Administrative Hearings Officer's Findings of Fact, Conclusions of Law and Decision ("Decision") dated April 9, 2012.  The Hearings Officer concluded that: (1) Plaintiffs did not show that DOE had predetermined F.K.'s proposed placement at King Intermediate School (Decision at 19); (2) Plaintiffs did not show that DOE failed to properly assess F.K. (<u>id.</u> at 22); (3) Plaintiffs did not show that the services offered in the IEP were insufficient in scope and duration to provide a FAPE (<u>id.</u>); (4) the offer of placement was specific and informed F.K.'s parents about what F.K.'s proposed placement would be (<u>id.</u> at 23); (5) the proposed placement at King was an appropriate placement for F.K. in the least restrictive environment (<u>id.</u> at 24); (6) the current private placement at Loveland Academy is also an appropriate placement for F.K. (<u>id.</u> at 26); and (7) if F.K. had attended King, DOE could have implemented the program offered in the IEP (<u>id.</u> at

28).

As a preliminary matter, the Court must decide how much deference to give to the Hearings Officer's findings.

Plaintiffs claim that the Hearings Officer "did not cite to any facts on the record to support his conclusions" and argue that his findings are therefore entitled to little deference. (Opening Brief at 17.) In fact, the Hearings Officer's opinion consists of 29 pages of detailed analysis of the testimony and documentary evidence that he considered through six days of evidentiary hearings. Plaintiffs' allegation that "the Hearings Officer made no reference to . . . any facts in the record to support his decision" is erroneous. (See Opening Brief at 12.)[4/] The lack of page citations to the record is inconvenient for purposes of review, but the factual basis for each of the Hearings Officer's findings is clear and well explained.

The Court finds that the Hearings Officer's findings were "thorough and careful" and are therefore entitled to "particular deference." See Anchorage Sch. Dist., 685 F.3d at

_____

[4/] 'Plaintiffs' own opening and reply briefs often lack citations to the record. Indeed, Plaintiffs' opening brief appears to be largely copy-and-pasted from Plaintiffs' closing brief filed before the Hearings Officer (see Administrative Record on Appeal ("ARA") No. 25), with almost no argument as to why the Hearings Officer's subsequent conclusions were inadequate. Plaintiffs' criticisms of the Hearings Officer's work are therefore particularly misplaced.

1053. The Court will "summarily dismiss" any "impermissible attempts to second-guess the [hearing officer's] characterization and weighing of the evidence." R.B. ex. rel. F.B. v. Napa Valley Unified Sch. Dist., 496 F.3d 932, 942 (9th Cir. 2007).

Plaintiffs appeal all but the sixth of the Hearings Officer's findings.  The Court will address these findings in the order that the Hearings Officer made them.


**A.   Whether the Offered Placement Was Predetermined**

Plaintiffs argue that DOE had already decided where to place F.K. before drafting the final IEP.[5/]  A school district violates the IDEA if it predetermines placement for a student before the IEP is developed or steers the IEP to the predetermined placement.  K.D. ex rel. C.L. v. Dep't of Educ., 665 F.3d 1110, 1123 (9th Cir. 2011) (citations omitted). Predetermination violates the IDEA because the Act requires that the placement be based on the IEP, and not vice versa.  Id. (citing Spielberg v. Henrico County Public Schs., 853 F.2d 256, 258-59 (4th Cir. 1988)).

---

[5/] As an initial matter, the Court notes that Plaintiffs' arguments do not address Student's current educational situation, because the IEP in question related to the 2011-2012 school year rather than the current school year.  During the December 3, 2012 hearing, the parties acknowledged that a new IEP was developed in February 2012; however, Plaintiffs' counsel represented that he has not been retained in connection with any request for due process that Plaintiffs may file concerning this new IEP.

The Hearings Officer found that Plaintiffs had not shown that DOE had predetermined placement. (Decision at 18.) Indeed, the Hearings Officer found that DOE went through a "heroic effort" to develop an appropriate IEP for F.K., including eight planning meetings, several of which were obstructed by A.K.'s "parent friend", who is apparently an employee or agent of Loveland Academy. (Decision at 18; <u>see, e.g.</u>, Hearing Tr. vol. 6, 1060:2-10, Feb. 16, 2012; <u>id.</u> 1061:2-1063:4; Hearing Tr. vol. 4, 724:5-10, Jan. 20, 2012; <u>id.</u> 718:22-720:25; <u>id.</u> 723:7-11.)

Plaintiffs have submitted little argument that DOE "predetermined" where to place F.K., and the Court can find no evidence of predetermination in the record. DOE held extensive meetings to create the IEP and evaluated F.K. on numerous metrics. A.K. was not present at the portion of the final IEP meeting where placement was discussed, since she chose to walk out before placement could be discussed. (Hearing Tr. vol. 6, 1061:2-1062:1.) Even if King were discussed at IEP meetings before the IEP was finalized, that would not be conclusive evidence that DOE had already decided to place F.K. there. <u>See K.D. ex rel. C.L.</u>, 665 F.3d at 1123; <u>Doyle v. Arlington County Sch. Bd.</u>, 806 F. Supp. 1253, 1262 (E.D. Va. 1992) (noting that school officials must come to an IEP meeting with "an open mind" but may have given thought to placement).

The Court sees no evidence in the record that DOE

-13-

predetermined where to place F.K.  The Court therefore AFFIRMS

the Hearings Officer's finding that Plaintiffs did not met their

burden of showing that DOE predetermined placement.

**B.   Whether the IEP Offers a FAPE**

Congress enacted the IDEA "to assure that all children

with disabilities have available to them . . . a free appropriate

public education which emphasizes special education and related

services designed to meet their unique needs . . . ."  20 U.S.C.

§ 1400(c).  A free appropriate public education ("FAPE") is

defined by the IDEA as:

> special education and related services that
> (A) have been provided at public expense,
> under public supervision and direction, and
> without charge; (B) meet the standards of the
> State educational agency; (C) include an
> appropriate preschool, elementary, or
> secondary school education in the State
> involved; and (D) are provided in conformity
> with the individualized education program
> required under section 1414(a)(5) of this
> title.

20 U.S.C. § 1401(a)(18).  A FAPE must be "tailored to the unique

needs of the handicapped child."  Rowley, 458 U.S. at 181.

To determine whether the IEP offered F.K. a FAPE, the

Court must determine "first whether the State complied with the

procedures set forth in the Act and, second, whether the

individualized education program developed through the Act's

procedures [was] reasonably calculated to enable the child to

receive educational benefits."  Amanda J. ex rel. Annette J. v.

Clark County Sch. Dist., 267 F.3d 877, 890 (9th Cir. 2001)

(quoting Rowley, 458 U.S. at 206-07).

Under the first prong, Plaintiffs' argument that DOE predetermined placement is discussed and rejected above. Plaintiffs also argue that DOE failed to properly assess F.K. to determine "whether she could be provided a FAPE in a less restrictive environment without being subject to discrimination pursuant to the mandates of Section 504 of the Rehabilitation Act." (Opening Brief at 9.)  Plaintiffs do not appear to have raised this argument before the Hearings Officer. (See ARA No. 25 (Petitioners' Closing Brief.))  The Ninth Circuit has held that a claim not raised "in [an] administrative complaint or due process hearing" was not exhausted and therefore not authorized by § 1415(i)(2)(A). J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 952 (9th Cir. 2010); see D.R. ex rel. Etsuko R. v. Dep't of Educ., 827 F. Supp. 2d 1161, 1168 & n.9 (D. Haw. 2011) (exploring rationale behind exhaustion provision).  The Court therefore declines to consider this argument.

Under the second prong, Plaintiffs argue that five services set forth in the IEP are "insufficient in their scope and duration" and are therefore not reasonably calculated to enable F.K. to receive educational benefits.  Those services are: community-based instruction, occupational therapy, physical therapy, speech/language pathology, and adaptive physical

education. (Opening Brief at 10.)  The Hearings Officer found that Plaintiffs did not meet their burden of demonstrating that these offered services were insufficient in scope and duration to provide a FAPE. (Decision at 22.) The Court agrees.

First, the IEP required two hours per week of community-based instruction during the five-week aquatic program and one hour per week of community-based instruction when the aquatic program was not occurring.  (ARA Ex. 33 at 353.) The "clarifications" section of the IEP states that the community-based instruction will address aquatics, community mobility, consumer skills, safety skills, and social skills. (Id.) Plaintiffs have not explained why the Hearings Officer was wrong to find that this offering was sufficient to constitute a FAPE.

Second, the IEP required 30 minutes per week of occupational therapy services, along with 15 minutes per month of occupational therapy consultation for F.K.'s first month at King, and then 15 minutes of consultation per quarter thereafter (Id. at 352).  The IEP noted that occupational therapy objectives would be reinforced throughout the day by the special education and support staff. (Id.) DOE's occupational therapist, after assessing F.K. (Resp. Ex. No. 30 at 446; see Hearing Tr. vol. 5, 917:2-12, Jan. 26, 2012) and attending several of the IEP meetings (Hearing Tr. vol. 5, 921:3-9), reviewed the IEP and opined that it met F.K.'s needs (id. at 921:3-12). The Hearings

Officer was entitled to give weight to this testimony.

Third, the IEP did not require any physical therapy. DOE's certified physical therapist evaluated F.K. in June 2010. (Resps.' Ex. 32.)  She did not find any specific physical therapy needs that would require specific physical therapy services. (Id. at 456.) Instead, the evaluator recommended that F.K. "should continue to participate in gross motor activities that are typically practiced at her age." (Id.) The IEP therefore includes gross motor activities and goals and requires adaptive physical education consultation to address gross motor goals. (TR 1084-85.)  Again, Plaintiffs have not explained why the physical therapist's evaluation was incorrect or pointed to any evidence that would call it into question.  The Court is not required to accept as true Plaintiffs' bare allegations that F.K. "needs physical therapy" and "is not able to participate effectively in many gross motor activities." (Opening Brief at 8.)

Fourth, the IEP required 3.5 hours per week of speech/language therapy (comprising 2.5 hours per week of one-to-one work and 1 hour per week of group work) during the school sessions, and two hours per week during the spring, summer, fall, and winter breaks.  The IEP also required two hours per week of speech/language consultation during F.K.'s first quarter at King. The IEP noted that both speech/language objectives would be

reinforced throughout the day by the special education and support staff. The IEP also noted that "if data suggests [F.K.] needs more" speech/language services, this provision could be reevaluated. (ARA Ex. 33 at 351.) The speech-language pathologist, who specializes in autism, evaluated F.K. with A.K.'s input. (Decision at 5 ¶ 20; see Resps. Ex. 27 at 437-41; Resps. Ex. 28 at 442.)  She reviewed the IEP and found that many of her recommendations were included in it, and that its goals were very appropriate. (Hearing Tr. vol 5, 831:22-833:4; id. 958:7-960:16; Hearing Tr. vol. 6, 1057:21-23.)  She served as a member of F.K.'s IEP team and was present for all eight IEP meetings. (Hearing Tr. vol. 5, 960:1-4; Resps.' Ex. 13 at 327).

Fifth, the IEP required 30 minutes per month of adaptive physical education consultation. The district educational specialist testified that the IEP team planned to place F.K. "in PE with her typically developing peers with one-to-one supports with an adaptive PE consultant helping adapt or modify the activities so that she could participate." (Hearing Tr. vol. 6, 1085:11-17.)  Plaintiffs provide no evidence, and the Court can find none, to support Plaintiffs' allegation that DOE "refused" to provide adaptive physical education to F.K.  (See Opening Brief at 8.)

In sum, the Hearings Officer was correct to find that Plaintiffs have not shown that the offered services were so

inadequate as to constitute a denial of FAPE.  Indeed, F.K. has been offered a raft of services individually designed for her needs after extensive evaluations of her abilities. "An 'appropriate' public education does not mean the absolutely best or 'potential-maximizing' education for the individual child . . . The states are obliged to provide 'a basic floor of opportunity' through a program 'individually designed to provide educational benefit to the handicapped child.' " <u>Union Sch. Dist. v. Smith</u>, 15 F.3d 1519, 1524 (9th Cir. 1994) (quoting <u>Longview</u>, 811 F.2d at 1314).  The Hearings Officer found and concluded that "the special education and related services that the DOE was offering matched or exceeded those offered by the current private placement." (Decision at 21.)  In light of the deference we grant the Hearings Officer as to judgments of educational policy, the Court finds that the services in the IEP were appropriate for F.K. and provided a "basic floor of opportunity" through a program "individually designed" for F.K.'s needs.

Finally, Plaintiffs argue that the IEP was inadequate because it required F.K. to move to King for only a few months and then almost immediately transition to a high school. (Opening Brief at 32-33; Reply at 1-2.)  This allegation is erroneous. The IEP was finalized in February 2011 and covered F.K.'s education until the end of the 2011-2012 school year – as F.K.'s mother admitted in response to the Hearings Officer's

questioning.  (<u>See</u> TR vol. I at 56:18-23.)  In other words, had Plaintiffs accepted the placement offer in February 2011, F.K. would have attended King for at least 15 months.  The fact that Plaintiffs' extensive appeals have delayed implementation of the IEP to beyond the end of that period does not mean that the IEP was inadequate when drafted.  <u>See, e.g.</u>, <u>Tracy N. v. Dep't of Educ.</u>, 715 F. Supp. 2d 1093, 1112 (D. Haw. 2010) (no denial of FAPE where "any delay in Student's placement for the 2008-09 school year was due to the re-assessment being conducted at Mother's request and also due to Mother's cancellation of three scheduled IEP meetings") <u>cf.</u> <u>Aaron P. v. Dep't of Educ.</u>, __ F. Supp. 2d. __, 2012 WL 4321715, at *16 (D. Haw. 2012) (appropriate inquiry is whether placement was reasonably calculated to provide student with a meaningful education benefit <u>at the time the IEP was developed</u>, not at the time of the administrative hearing).

**C.   Whether the PWN makes a legally sufficient and proper order of placement**

Under 20 U.S.C. § 1415(b)(1)(B), an educational agency is required to give written prior notice to parents when it proposes, or refuses, to initiate or change the educational placement of a disabled child.  <u>Union Sch. Dist.</u>, 15 F.3d at 1525.  The purpose of the requirement is to "create[] a clear record . . . about when placements were offered, what placements were offered, and what additional educational assistance was

offered to supplement a placement, if any." Id. at 1526.

Plaintiffs argue that the "special educational classroom" offered in the PWN is "unspecific." (Opening Brief at 19, 21.) Plaintiffs allege that "[t]he DOE knew it did not have an appropriate educational setting so it made the offer so vague that it could cover the definition of any special education class on any school campus." (Opening Brief at 20.) Plaintiffs claim that "[d]enial of a valid placement proposal seriously impaired the Plaintiffs' right to participate in the IEP process, as the Parent was not able to determine what was being offered at the meeting." (Opening Brief at 23.)

The Hearings Officer found that DOE made a specific written offer of placement through the IEP and the PWN (Decision at 24) which informed parents about what Student's proposed placement would be (Decision at 23).

Plaintiffs' arguments on this point are at best incoherent and definitely questionable. Plaintiffs repeatedly imply or argue that DOE did not give a written offer of placement and did not name the school in which F.K. was to be placed. The detailed, three-page PWN is in the record. (Resps.' Ex. 14 at 376-78.) The PWN clearly lists the school and the school's principal on both the first and last pages (of only three pages). It contains a detailed description of the classes and services that F.K. will receive. Plaintiffs cannot possibly believe that

the written PWN does not exist or does not list the school's name.

DOE clearly gave a written offer of placement. Plaintiffs' reliance on <u>Union School District v. Smith</u>, 15 F.3d 1519 (9th Cir. 1994), is therefore inapposite.

The Court AFFIRMS the Hearings Officer's decision that the PWN was a legally sufficient and proper order of placement.

**D.    Whether the Proposed Placement Was in a Least Restrictive Environment**

The education of a disabled child should take place in the "least restrictive environment." 34 C.F.R. § 300.552(d). "While every effort is to be made to place a student in the least restrictive environment, it must be the least restrictive environment which also meets the child's IEP goals." <u>County of San Diego v. Cal. Special Educ. Hearing Office</u>, 93 F.3d 1458, 1468 (9th Cir. 1996). It is not clear from Plaintiffs' briefing whether they challenge the Hearings Officer's finding on this point. For the sake of completeness, the Court notes that it agrees with the Hearings Officer's findings. The PWN offers F.K. a placement on her home school campus near where she lives and surrounded by neurotypical peers. (Resps.' Ex. 14 at 376.) This is consistent with the "overarching goal of the IDEA[, which is] to prevent the isolation and exclusion of disabled children, and provide them with a classroom setting as similar to non-disabled children as possible." <u>N.D. ex rel. Parents v. Dep't of Educ.</u>,

600 F.3d 1104, 1115 (9th Cir. 2010).  The Hearings Officer found
that the home school was a less restrictive environment than
F.K.'s current private school, because Loveland "is a mental
health treatment facility with an academic component" whereas
King "offers Student numerous opportunities to generalize with
non-disabled peers in school-wide and after school settings."
(Decision at 24.)

**E.   Whether, if F.K. Had Attended King, DOE Could Have
Implemented the IEP There**

         Plaintiffs list seventeen reasons that they believe DOE
could not have implemented the IEP at King.  (Opening Brief at 6-
8.)  Many have been addressed above.  The Court will now address
the remainder of Plaintiffs' list.

         Plaintiffs claim that King "lacks personnel who are
qualified in ASL" and cannot provide assistive technology
communication and a training program to address F.K.'s auditory
needs.  The Hearings Officer credited the speech-language
pathologist's testimony that DOE had two teachers who could
provide sign language services for the hearing-impaired.
(Decision at 27; id. at 7 ¶ 28; Hearing Tr., vol. 5, 967:9-20.)
DOE is aware of F.K.'s hearing issues and performed an
audiological evaluation of her in April 2010.  (Resps.' Ex. 24.)
The IEP states that F.K. will receive "Hearing Services
Consultation" and "Assistive Technology Service" and states that
the assistive technology will be available for "all educational

-23-

tasks that involve communication" and will be evaluated on an ongoing basis.  Plaintiffs have provided no evidence that would call this evidence into question.

Plaintiffs claim that King's classrooms are overcrowded, some peers are below F.K.'s level, and the classes are noisy and lack specially designed curriculum and assistive technology.  The Hearings Officer found, based on the evidence presented, that F.K. would have been placed in a fully self-contained classroom with five students.  (Decision at 27; see Hearing Tr., vol. 4, 694:4-8.)  The Hearings Officer found that both testimony and photographic evidence showed that F.K.'s proposed classroom was large, clean, well-organized, and included "a lot of equipment, supplies, educational materials, and resources" including visual supports, computers, and an iPad.  (Decision at 27; see Hearing Tr. vol. 4, 601:3-608:6.)  The photographs were obtained during an inspection for which the teacher was given only ten minutes' notice.  (Decision at 11 ¶ 56; Hearing Tr. vol. 4, 601:5-22; id. at 602:11-603:1.)  Contrary to Plaintiffs' claim that "some peers are below F.K.'s level", the Hearings Officer credited the testimony of F.K.'s proposed teacher that although F.K. would not be the lowest functioning student, she would be "at the lower end . . . compared with the other students in her classroom."  (Decision at 27; Decision at 10 ¶ 53; see Hearing Tr. vol. 4, 700:5-10.)  The district

-24-

educational specialist testified that F.K. would have "peers with
higher level language skills, as well as general education peers"
during lunch, recess, and various activities and after-school
programs. (Hearing Tr. vol. 4, 663:16-22). Both the DOE's
board-certified behavioral analyst and F.K.'s proposed teacher
testified that the classroom is ordinarily quiet. (Hearing Tr.
vol. 4, 700:15.)

     Plaintiffs claim that the home school cannot provide
sufficient after-school community-based instruction or a highly
structured autism-specific after-school program. The DOE's board-
certified behavioral analyst testified that the home school has
an after-school and community-based instruction program that is
individualized to a student's needs. (Hearing Tr. vol. 4,
662:24-663:22.) He testified as to how F.K.'s program would be
developed and revised. (Id. at 664:3-23.) Plaintiffs have not
explained why this program would not fit F.K.'s IEP or the
descriptions provided in the PWN.

     Plaintiffs claim that King cannot implement the
following types of goals listed in the IEP (other than those
already addressed above): "functional"; transferring or
generalizing learned skills; communication skills; speech;
reading training; and mental health support. The Hearings
Officer credited testimony from the district educational
specialist and F.K.'s proposed teacher that the teacher would be

able to implement the IEP.  (Decision at 26, 27; <u>see</u> Hearing Tr.

vol. 4, 696:2-9; Hearing Tr., vol. 6, 1074:16-1075:11.)[6]

Indeed, F.K.'s proposed teacher had attended F.K.'s IEP meetings

and was very familiar with the IEP.  (Hearing Tr. vol. 4, 696:2-

5.)  The Hearings Officer found that DOE had access to the

district school psychologist, an occupational therapist, and a

speech-language pathologist (all three of whom testified at the

hearing (<u>see</u> Decision at 21-22)).  The occupational therapist,

after assessing F.K. and reviewing the IEP, opined that the home

school could implement the IEP.  (Hearing Tr. vol. 5, 921:10-18.)

The district educational specialist also testified that "if there

was something in [F.K.'s] IEP that [her teacher] didn't have

available, we would make it available.  If she needed it, she

would get it in that classroom."  (Hearing Tr. vol. 6, 1075:15-

22.) Plaintiffs' arguments to the contrary are unconvincing.

Plaintiffs claim that F.K. needs a "highly trained

skills trainer for safety reasons."  Plaintiffs' brief presents

no argument on this point other than that conclusory statement.

The Court is unable to determine which of the professionals

described in Plaintiffs' briefing, if any, is the referenced

---

[6] Plaintiffs elsewhere claim that F.K.'s proposed teacher
is not trained in applied behavioral analysis ("ABA").  The
Hearings Officer credited the testimony of DOE witnesses,
including F.K.'s proposed teacher, that she was trained in ABA.
(Decision at 26-27; <u>see</u> Hearing Tr. vol. 4, 696:10-697:18;
Hearing Tr. vol. 6, 1107:1-23 ("I know for a fact from observing
Pam in action that she is using applied behavioral analysis.")

"highly trained skills trainer".  As described above, DOE had access to several professional consultants.  DOE also planned to provide F.K. with one-to-one assistance during the school day. (Resps. Ex. 13 at 351, 353; Hearing Tr. vol. 6, 1108:15-1109:24.)

Plaintiffs claim that King cannot provide the speech therapy services that F.K. needs. Plaintiffs' only ground for this argument appears to be that DOE has not stated which specific personnel will provide speech therapy to F.K..  As the Hearings Officer noted, DOE is not required to designate a specific person in the IEP; the district educational specialist repeatedly guaranteed on oath that F.K. would receive services from a speech-language therapist. (See, e.g., Hearing Tr. vol. 6, 1117:5-25; id. 1120:11-24.)  As Plaintiffs acknowledge, the speech language pathologist who testified at the hearing and who served as a member of F.K.'s IEP team stated that she may provide the services herself. (Hearing Tr. vol. 5, 960:17-961:12.)  The speech language pathologist testified that she foresaw no difficulty in implementing the IEP's goals: "All we need is the student."  (Hearing Tr. vol. 5, 960:12-16.)  There is therefore no evidence that DOE would not be able to provide such services.

Plaintiffs' more general arguments that the school "lacks an appropriate educational setting for F.K." are based almost entirely on the testimony of Dr. Dukes, the owner of Loveland Academy.  (See Opening Brief at 23-28.)  Dr. Dukes'

-27-

testimony was contradicted by various DOE witnesses; for example, Dr. Dukes testified that F.K. would be in a classroom with more than five students, but F.K.'s proposed teacher testified that the classroom would contain five or fewer students. (Compare Hearing Tr. vol. 1, 163:4-7 (Dr. Dukes' testimony) to Hearing Tr., vol. 4, 694:4-8 (teacher's testimony).). Dr. Dukes testified that the IEP would be difficult or impossible to implement, but F.K.'s proposed teacher and the various DOE experts – including the speech language pathologist who could have provided direct services to F.K. – testified that they could implement the IEP. (Compare Hearing Tr. vol. 1, 149:22-156:9 (Dr. Dukes' testimony) to, e.g., Hearing Tr. vol. 4, 696:2-9 (teacher's testimony) and Hearing Tr., vol. 6, 1074:16-1075:11 (district educational specialist's testimony).) Neither the Hearings Officer nor the Court is obliged to accept Dr. Dukes' assessment of the IEP over everyone else's.  The Hearings Officer was entitled to determine which testimony he found credible and the Court is not inclined to disturb the Hearings Officer's credibility determinations without compelling evidence that they were faulty. Plaintiffs have pointed to no such evidence and the Court has found none in the record.

     For these reasons, the Court AFFIRMS the Hearings Officer's finding that Plaintiffs did not show that the services offered in the IEP were insufficient in scope and duration to

provide a FAPE.  The Court therefore AFFIRMS the Hearings
Officer's finding that DOE could have implemented the IEP as
drafted.


**F.  Whether Loveland Is An Appropriate Placement**

Finally, DOE requests that the Court find that the
Hearings Officer determined Loveland an appropriate placement
only for reimbursement purposes and not as an appropriate
placement for stay put.  During the December 3, 2012 hearing,
counsel for the DOE represented that Hearings Officers often make
such an additional finding of appropriate placement so that in
case their ruling is reversed they can avoid a new due process
proceeding by relying on this additional finding.  The Court
declines to make the requested finding, since that is not what
the Hearing Officer determined.  The Hearings Officer found that,
despite some reservations regarding the programming at Loveland,
Loveland "is an appropriate placement for Student."  (Decision at
24.)  The Hearings Officer did not place any restrictions on his
finding.  Given the Hearings Officer's careful and thoughtful
analysis and extensive review of the evidence and testimony
presented to him, the Court will not disturb that finding.  The
Court does conclude that the Hearings Officer clearly determined
in the due process proceeding before him that King is the
appropriate placement for F.K. (Decision at 28.)

**3.  Challenge to DOE-SY 1112-067**

Plaintiffs' second appeal concerns the Administrative Hearings Officer's Findings of Fact, Conclusions of Law and Decision in DOE-SY 1112-067, dated April 25, 2012.  In that due process hearing, the Hearings Officer concluded that: (1) Plaintiffs did not show that DOE's failure to keep current on payments to Loveland Academy is a unilateral placement of Student; (2) the Hearings Officer had no jurisdiction to hold that Acts 128 and 129 of the 2011 Hawaii Legislature conflict with federal law or are preempted by federal law;[7/] and (3) Plaintiffs did not show that any reevaluations or attempted reevaluations by DOE had any material detrimental effect on Student's education.  (Hearings Officer's Findings of Facts and Conclusions of Law in DOE-SY 1112-067, at 16.)  The Hearings Officer ordered that Plaintiffs' claims be dismissed and determined that the DOE was the prevailing party.  Id.

Plaintiffs' Opening Brief in this case presents four central arguments, all of which arise out of the February 29, 2011 IEP and the related March 10, 2011 PWN:  (i) the DOE's

---

[7/] The hearings officer also concluded that he did not have jurisdiction with respect to Plaintiffs' claims regarding Student's 2010-2011 IEP, for which Plaintiffs had previously obtained a final decision in a separate due process hearing, nor did he have jurisdiction to compel payments by the DOE to Loveland.  Id.

-30-

failure to make timely tuition and stay put payments to Loveland

violates the IDEA and constitutes a unilateral placement and a

denial of FAPE; (iii) Acts 128 and 129 of the 2010 Legislature,

as implemented, are in direct conflict with the IDEA, the Health

Insurance Portability and Accountability Act of 1996 ("HIPAA",

Pub. L. 104-191), and the Family Educational Rights and Privacy

Act ("FERPA"); and (iv) having Student reevaluated more than once

a year by the DOE violates the IDEA and is a material

interruption in her academic progress and is a denial of FAPE.

See Plaintiff's Opening Brief at 3-4.  Through this appeal,

Plaintiffs request that the Court: (1) reverse the Hearings

Officer's April 25, 2012 Decision in DOE-SY 1112-067; (2) make a

finding that the failure to make timely tuition and stay put

payments to Loveland Academy is a unilateral placement and a

violation of the IDEA and constitutes a denial of FAPE; and (3)

order that stay put payments to Loveland Academy be made current,

consistent with this Court's previous orders.  Id. at 25-26.[8]

---

[8] The Court observes that Plaintiffs have already raised
many of the issues herein in the related case of F.K. et al. v.
Dep't of Educ., State of Hawaii, Civ. No. 12-00136 ACK-RLP.  In
fact, on June 22, 2012, the Court considered virtually identical
issues to those presented in the current "appeal."  Namely, in
F.K. v. Dep't of Educ., Civ. No. 12-00136 ACK-RLP, the Court
considered whether: (1) the DOE's failure to reimburse is a
unilateral placement and a denial of FAPE; (2) Defendants have
violated 20 U.S.C. 1415(j) (implementing stay put payments); (3)
Defendants violated the Hearing Officer's Stay Put order; (4) Act
129 of the 2010 Legislature is preempted by federal law; (5) the
DOE's reevaluations of Student more than once a year violates the
                                             (continued...)

As a preliminary matter, the Court must decide how much deference to give to the Hearings Officer's findings. The Court finds that the Hearings Officer's opinion consists of 16 pages of detailed and careful analysis of the testimony and documentary evidence that he considered over two days of evidentiary hearings. The administrative hearings officer explains his legal conclusions and cites specific facts supporting those conclusions. See J.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 441 (9th Cir. 2010); cf. Marc M. v. Dep't of Educ., Hawaii, 762 F. Supp. 2d 1235, 1242 (D. Haw. 2011); C.P. v. Hawaii, Civ. No. 09-00393 DAE-BMK, 2010 WL 1962944 at *8 n. 7 (D. Haw. May 17, 2010). The Court finds that the Hearings Officer's findings were "thorough and careful" and are therefore entitled to "particular deference." See Anchorage Sch. Dist. v. M.P., 685 F.3d 1047, 1053 (9th Cir. 2012). The Court will "summarily dismiss" any "impermissible attempts to second-guess the [hearing officer's] characterization and weighing of the evidence." R.B. ex. rel. F.B. v. Napa Valley Unified Sch. Dist., 496 F.3d 932, 942 (9th

---

8/ (...continued)
IDEA; and (6) Defendants enforce and implement Act 129 in violation of the IDEA. See Order Granting, As Modified, Plaintiffs' Motion for a Preliminary Injunction at 3, Civ. No. 12-00136 ACK-RLP, Doc. No. 33. Plaintiffs admit as much in their Opening Brief, noting, for example, that "[t]his Court has already reviewed and answered this question in F.K. v. Dep't of Educ., Case No. 1:12-cv-00136 ACK-RLP at Document No. 33, in its Order Granting as Modified Plaintiff's Motion for Preliminary Injunction." See Plaintiff's Opening Br. at 19.

Cir. 2007).  The Court will address these findings in the order that the Hearings Officer made them.

## A.   Whether Acts 128 and 129 are Preempted by Federal Law

The Hearings Officer found and concluded that he was without jurisdiction to address whether Acts 128 and 129 of the Hawaii State Legislature are preempted by federal law.  (Hearings Officer's Findings of Fact and Conclusions of Law in DOE-SY 1112-067, at 11-12.)  Indeed, the Hearings Officer stated that Plaintiff's plan to file a lawsuit in federal court concerning the alleged conflict between Acts 128 and/or 129 and federal law "may be a proper vehicle for Petitioners to obtain a ruling on the merits of their federal pre-emption claims." Id.[9/]

Counsel for Plaintiffs heeded the Administrative Officer's advice and filed a complaint in federal district court on March 9, 2012, seeking a ruling that Act 129 was preempted by federal law and accordingly was an improper basis for the DOE to withhold tuition payments from Loveland Academy.  See F.K. v. Dep't of Educ., Civ. No. 12-00136, Doc. No. 1.  The Court

---

[9/] The Hearings Officer also correctly concluded that he did not have jurisdiction to decide claims related to other students with respect to Acts 128 and 129, claims concerning matters beyond the appropriateness of Student's IEP, or claims related to the 2010-2011 IEP which was the subject of a separate due process hearing in Case No. DOE-SY1011-126 (which, as described above, is challenged in a separate appeal that has been consolidated in this case and is discussed supra).   See id. at 12-13.

concludes that Plaintiffs' federal preemption argument was improperly brought before the Administrative Hearings Officer, who correctly found that he lacked jurisdiction.[10/]  For these reasons, the Court AFFIRMS the Hearings Officer's ruling on this issue.  As noted above, Plaintiffs have an opportunity to challenge the validity of state law as it allegedly conflicts with the IDEA and other federal law in Civ. No. 12-00136, which is also currently pending before this Court.

**B.  Unilateral Placement**

        The Court now considers whether the DOE's failure to fund F.K.'s education at Loveland during Stay Put constitutes a unilateral placement and thus a denial of FAPE.  The Hearings Officer concluded that Plaintiffs did not show by a preponderance of the evidence that DOE's failure to keep current on payments to Loveland Academy constituted a unilateral placement of Student. Id. at 16.  The Hearings Officer found that the DOE failed to make payments to Loveland for F.K.'s services in September, October, and November of 2011 for "no stated official reason,"

_____

        [10/] Administrative review is authorized with respect to matters relating exclusively to "the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." See 20 U.S.C. 1415(b)(6)(A); see also H.A.R. 8-60-61(a)(1) and (2).  Under H.A.R. 8-60-67 and 20 U.S.C. 1415(f)(3)(E), a hearings officer's jurisdiction is limited to a finding of whether a FAPE was provided to a student.  See Defendants' Answering Brief, at 3.

and subsequently failed to make payments for services for December 2011 and January 2012 because of Loveland's alleged failure to comply with Act 129. (Hearings Officer's Findings of Facts and Conclusions of Law in 1112-067, at 14.)  However, even assuming that the DOE had no arguable excuse for nonpayment, the Hearings Officer stated that "the touchstone consideration insofar as Student is concerned is whether Student's learning experience has been affected in some significant way."  Id.

Consequently, the Hearings Officer stated that Plaintiffs had failed to meet their burden of proof in establishing that the DOE's cutting off funding had a significant effect on Student, highlighting that there had been no effect whatsoever on Student's programming until January 21, 2012.  Id. After that date, the Hearings Officer stated, although a skills trainer who worked with Student three afternoons per week was apparently let go, Loveland compensated for that loss by "making do with others or changing Student's activity schedule around," and there was " no evidence that any of this affected Student's learning."  Id.  The Hearings Officer also stated that Plaintiffs' actual claim was that there was a "possibility" that Student's learning experience would be detrimentally affected at some point in the future based upon the DOE's continued nonpayment, rather than that the nonpayment had already led to and that the DOE's actions "will lead" to a unilateral change in

placement.  Id. at 15.[11/]

        In their Opening Brief, Plaintiffs argue that the DOE's

failure to keep current on payments for Student to Loveland

constitutes a unilateral placement and accordingly a denial of

FAPE.  (Plaintiffs' Opening Brief in DOE-SY 1112-067 at 3.)

Plaintiffs underscore that the DOE is currently over one year

behind, having not made any stay put payments for F.K. to

Loveland Academy since September 2011.  Id. at 7 (citing

Testimony of Dr. Dukes and John Loveland).  Mother testified that

she began receiving invoices from Loveland Academy in "maybe July

or August of 2011," and that more recently she was told that

F.K.'s services would be cut and/or F.K. could be released from

the school.  (Plaintiffs' Opening Brief at 12.)  Plaintiffs

assert that Loveland Academy has complied with all monitoring

requests, and the DOE still has not paid one cent in "stay put"

payments.  (Plaintiffs' Reply in DOE-SY 1112-067, at 2.)

        In essence, Defendant counters that "[b]ut for

Loveland's interference, Loveland would be paid." (Defendant's

Answering Brief at 22.)  Defendant asserts that its failure to

pay for F.K.'s expenses at Loveland is based upon the DOE's

_____

        [11/] The Hearings Officer further noted that to the extent
Plaintiffs sought injunctive relief with respect to the alleged
unilateral placement, the Hearings Officer had no jurisdiction to
grant any type of preliminary injunction against the DOE (noting
that Plaintiffs conceded as much in their Closing Brief at page
18 footnote 1).  Id. at 15.

attempt to comply with state law, namely Act 129.  Id.  Further,
Defendant claims that this case more closely mirrors the
situation in DeLeon v. Susquehanna Community School District,[12]
wherein the Court held that the District's decision to stop
transportation reimbursement to a plaintiff who had been driving
her child to school (a partial cut-off of funding) did not amount
to a change in placement.[13]

       As an initial matter, the Court observes that in
granting Plaintiff F.K.'s motion for a preliminary injunction,
the Court made a limited ruling that F.K. would likely succeed in
showing that, among other things, the DOE's failure to pay was a
unilateral placement.  (See Civ. No. 12-00136 ACK-RLP, Doc. No.
33, Order Granting Preliminary Injunction at 40.) The Court's
grant of a preliminary injunction was not a final ruling on the
merits. See Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)
("The purpose of a preliminary injunction is merely to preserve

---

[12] 747 F.2d 149, 153 (3d Cir. 1984).

[13] Defendant further argues that even if the Court finds
that the DOE's withholding of payments to Loveland constitutes a
unilateral change in placement, the law "allows fiscally driven
policies and decision to trump stay put."  Id. at 23 (citing
DeLeon, 747 F.2d at 153 (3d Cir. 1984) (citing Tilton v.
Jefferson County Bd. of Educ., 705 F.2d 800, 804 (6th Cir.
1983)). The Court observes that this defense is inapposite,
because the DOE's decision to withhold funding for F.K.'s
services at Loveland is based not upon a fiscal policy of the
state or state agency, but rather the DOE's contention that it
must withhold payment pursuant to state law in light of
Loveland's refusal to permit monitoring of F.K.

the relative positions of the parties until a trial on the merits can be held. . . . [T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.")  Furthermore, as discussed in this section, Plaintiffs had represented there were changes in F.K.'s services at Loveland at the time the Court granted a preliminary injunction in Civ. No. 12-00136 ACK-RLP, but in the subject due process proceeding additional evidence presented established that in fact there has been no such change.

Although the language of the statute does not reference payment or reimbursement, the Ninth Circuit Court of Appeals has interpreted the IDEA's stay put provision to require a school district to fund a child's "current educational placement" at a private school, when applicable, pending any administrative or judicial proceedings under the IDEA.  Clovis Unified Sch. Dist. v. California Office of Admin. Hearings, 903 F.2d 635, 641(9th Cir. 1990).

The Ninth Circuit Court of Appeals recently addressed the issue of unilateral placement in N.D. v. State of Hawaii, Dep't of Educ., 600 F.3d 1104 (9th Cir. 2010).  In that case, the court stated:

> [W]e hold that 'educational placement' means the general
> educational program of the student.  More specifically we
> conclude that under the IDEA a change in educational
> placement relates to whether the student is moved from one
> type of program - i.e., regular class - to another type -

> i.e., home instruction.  A change in educational placement can also result when there is a significant change in the student's program even if the student remains in the same setting."

Id. at 1116.  The court also cited favorably to the Third Circuit Court of Appeals' opinion in DeLeon[14/] for the proposition that a minor alteration in a child's school day does not constitute a change in educational placement.  N.D., 600 F.3d at 1116.  While Plaintiffs rely heavily on the decision in Drinker by Drinker v. Colonial School District[15/] and similar cases discussed below,[16/] the N.D. court stated, "[t]wo cases could be construed as providing contrary authority to the above conclusion.  In [Drinker], the Third Circuit indicated that a cut off of public

---

[14/] 747 F.2d at 153.

[15/] 78 F.3d 859 (3d Cir. 1996).

[16/] Courts in other circuits have recognized that in some instances a failure to pay can constitute a unilateral placement and denial of FAPE.  Both the Second and Third Circuits have noted that "implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing.  To cut off public funds would amount to a unilateral change in placement, prohibited by the Act."   Drinker by Drinker v. Colonial Sch. Dist., 78 F.3d 859, 865 (3d Cir. 1996) (citing Zvi D. by Shirley D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982)). A recent opinion from the U.S. District Court for the District of Columbia concluded that it was a violation of the IDEA for the D.C. public school authorities to make late payments because those actions would lead to a discontinuance of the student's placement, therefore constituting an unlawful unilateral placement.  Petties v. Dist. of Columbia, 881 F. Supp. 63 (D.D.C. 1995).

funds 'amount[s] to a unilateral change in placement.'  However, Drinker actually supports our conclusion because the funding cut-off contemplated there is a complete cut-off of funding for private placement, effectively eliminating private placement as an alternative setting . . . . Here, there is no such complete cut-off."  N.D., 600 F.3d at 1117.  In N.D., the court found that furlough Fridays did not amount to a "complete cut-off of funding for private placement, effectively eliminating private placement as an alternative setting."  600 F.3d at 1117.  Rather, the court concluded that the State was continuing to finance educational placement, just with slightly fewer school days.  Id.

Likewise, here the Court observes that a complete cut-off of funding is not taking place, as the Court has already issued a Preliminary Injunction Order mandating that the DOE make Stay Put payments to Loveland for F.K.'s services for the pendency of the litigation in a related case, regardless of billing disputes.  (See Civ. No. 12-00136 ACK-RLP, Doc. No. 33 at 49.)

In light of Ninth Circuit case law, the Court concludes that Plaintiffs have failed to establish that the DOE's failure to pay F.K.'s tuition constitutes a unilateral placement and thus a denial of FAPE.  The Hearings Officer set forth a compelling argument that Plaintiffs failed to show that any significant change had actually occurred in Student's programming, instead

focusing upon what might happen at some time in the future.  See also Aliah K. ex rel. Loretta M. v. Hawaii Dep't of Educ., 788 F. Supp. 2d 1176 (D. Haw. 2011) (in another IDEA case involving Loveland Academy, finding that plaintiffs failed to establish irreparable harm for purposes of a preliminary injunction where plaintiffs established that student's exclusion from Loveland for nonpayment was a "possibility," but failed to show that there was an imminent threat of exclusion.)

Mother testified that F.K.'s services had not been cut and "remain the same," and also stated that she had never paid any tuition to Loveland and admitted that Loveland set no time line on when F.K. would be released from Loveland.  See Tr. Vol. 1-54:6-19; Tr. Vol. I-55:17-56:9.  Moreover, during the December 3, 2012 hearing, defense counsel represented that at an earlier meeting in chambers before Magistrate Judge Puglisi, Dr. Dukes stated that no change had occurred in F.K.'s services at Loveland; directly contradicting Dr. Dukes' earlier statements. (See Defendant's Answering Brief in DOE-SY 1112-067, at 20.)

For these reasons, the Court concludes that no "significant change" has occurred in Student's programming as a result of the DOE's failure to keep current on some payments to Loveland Academy.

Accordingly, the Court ADOPTS the Hearings Officer's findings and conclusion with respect to the issue of unilateral

placement.

## C.  Multiple Assessments of Student

        With respect to whether the DOE improperly conducted

multiple assessments of Student, the Hearings Officer found that

in reality the DOE "made no observations, much less assessments,

of Student during the time period in question," and accordingly

found that Plaintiffs failed to meet their burden of proof by a

preponderance of the evidence that any reevaluations or attempted

reevaluations by the DOE had any material detrimental effect on

Student's education. (Hearings Officer's Findings of Fact and

Conclusions of Law in DOE-SY 1112-067 at 15-16.)  The Court

observes that federal law clearly states:

**§300.303 Reevaluations.**

**(a) General**. A public agency must ensure that a
reevaluation of each child with a disability is
conducted in accordance with §§300.304 through
300.311--

    (1) If the public agency determines that the
        educational or related services needs, including
        improved academic achievement and functional
        performance, of the child warrant a reevaluation;
        or

    (2) If the child's parent or teacher requests a
    reevaluation.

**(b) Limitation**. A reevaluation conducted under
paragraph (a) of this section--

    (1) May occur not more than once a year, unless the
    parent and the public agency agree otherwise; and

> (2) Must occur at least once every 3 years, unless
> the parent and the public agency agree that a
> reevaluation is unnecessary.

20 U.S.C. 1414(a)(2)) § 300.303.  Nevertheless, the Court

observes that Plaintiffs have presented no evidence that DOE

"reevaluated" or attempted to "reevaluate" Student more than once

in a given year during the relevant time period, as the Hearings

Officer stated in his decision.  Defendant asserts that for an

extended period of time, the DOE "had no idea if Loveland was

implementing Student's IEP or whether standards were being

adhered to," as the DOE's last actual observation of Student

occurred in the summer of 2010.  (Defendants' Answering Brief, at

18.)  Nevertheless, the Court observes that should the DOE seek

to conduct more than one reevaluation on an annual basis, the DOE

must reach an agreement with F.K.'s parent(s) in order to do so.

See 20 U.S.C. 1414(a)(2)) § 300.303.[17/]  For these reasons, the

Court AFFIRMS the Hearings Officer's findings and conclusion with

respect to multiple reevaluations of Student.

---

[17/] During the December 3, 2012 hearing, Plaintiffs' counsel
stated that the issue of assessments has been resolved, because
all of the necessary consents have been obtained and the DOE has
monitored to its satisfaction.  However, to the extent Plaintiffs
raise issues of consent requirements under FERPA, the Court finds
that neither Plaintiffs nor Defendants adequately address the
issue of whether the DOE is required to procure consent pursuant
to FERPA to obtain education records for a student attending a
private school that is indirectly funded by the DOE.  Should the
issue of FERPA consent arise going forward, the Court directs the
parties to brief this issue for the Court's consideration in the
related and ongoing case of F.K. v. Dep't of Educ., Civ. No. 12-
00136 ACK-RLP.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court AFFIRMS: (1) the Administrative Hearings officer's Findings of Fact, Conclusions of Law, and Decision in DOE SY-1011-126; and (2) the Administrative Hearings Officer's Findings of Fact, Conclusions of Law, and Decision in DOE-SY 1112-067.


IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, December 11, 2012.



_____

Alan C. Kay

Sr. United States District Judge

<u>F.K., et al. v. Dep't of Educ., State of Hawaii, et al.</u>, Civ. No. 12-00240 ACK-RLP:  Order Affirming the Administrative Hearings officers' Findings of Fact, Conclusions of Law, and Decisions in DOE-SY 1011-126 and 1112-067.